

FILED

2010 JAN 11  PM 3: 05

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DEREK E. FRAZEE,

                    Plaintiff,                    CASE NO.: _____

vs.                                               6-10-CV-52 - ORL-18KRS

ALLEGIANT AIR LLC,
a Foreign Limited Liability Company,

                    Defendant.

_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

PLAINTIFF, Derek E. Frazee (hereafter "FRAZEE"), by and through his counsel, hereby

files this Verified Complaint against ALLEGIANT AIR LLC, (hereafter "ALLEGIANT"), and

alleges as follows:

### NATURE OF ACTION

1.      This is an action arising from and seeking redress for violations of the Family and

Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. (hereafter "FMLA").

### JURISDICTION AND VENUE

2.      Jurisdiction in this Court is proper as FRAZEE is bringing this action pursuant to

the FMLA, thereby raising a federal question over which this Court possesses original

jurisdiction.

3.      The acts and omissions that give rise to this action occurred in Seminole County,

Florida.  Venue is therefore proper in the United States District Court for the Middle District of

Florida, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.      At all times material hereto, FRAZEE was a resident of the State of Florida.

5.      At all times material hereto, ALLEGIANT was a Foreign Limited Liability Company doing business in Seminole County, Florida.

6.      At all times material hereto, ALLEGIANT was engaged in commerce and employed in excess of fifty (50) employees.  ALLEGIANT is therefore an "employer" as defined by the FMLA.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.      FRAZEE began his employment with ALLEGIANT on October 1, 2005, as a Flight Attendant.

8.      FRAZEE suffers from severe depression, acute anxiety disorder and other medical conditions for which he received medical treatment entitling him to leave under the FMLA.

9.      On or about December 19, 2008, FRAZEE commenced FMLA leave related to his medical conditions.

10.     FRAZEE completed the appropriate FMLA forms related to the leave and submitted them to ALLEGIANT.  These forms indicated that when FRAZEE returned to work, it would be on an intermittent basis.

11.     ALLEGIANT also provided FRAZEE with a Statement of Employee Rights and Obligations form which noted that he would return to work on an intermittent basis and that intermittent slips were **not** required for any instances of intermittent leave following his return to work.

12.     In addition to the information contained on the FMLA forms, ALLEGIANT was also well aware of FRAZEE's need for intermittent leave upon his return as FRAZEE had numerous communications with Human Resources personnel, Robin Clark, prior to and after his return from FMLA leave in March of 2009.

13.     FRAZEE was released by his physicians to return to work on March 4, 2009, on a intermittent basis.  Furthermore, given the nature of his medical conditions, ALLEGIANT was informed that it was not always possible for FRAZEE to give advance notice of his need for leave or to know how long the leave would last.  FRAZEE was not being released by his physicians to return to full duty until March 19, 2009.  Furthermore, Ms. Clark informed FRAZEE that he was entitled to ninety (90) days of intermittent leave under ALLEGIANT's policies.

14.     ALLEGIANT placed FRAZEE on "reserve" status when he returned to work in March 2009.  Because of his "reserve" status, FRAZEE did not have a schedule set in advance and generally was notified only two hours in advance of the flight to which he was assigned to work.

15.     FRAZEE worked a regular shift on March 4, 2009.  The March 4, 2009, flight was delayed and FRAZEE received little sleep that evening.  On March 5, 2009, FRAZEE was unable to work a non-scheduled shift and took FMLA leave as a result of a change in his medications.

16.     FRAZEE was also unable to work and took FMLA leave when he was called in the middle of the night (approximately 4:30 am) to work a 6:30 am flight on March 7, 2009.

17.     Thereafter, FRAZEE was called in on reserve and worked several flights without incident.

18.    On March 16, 2009, FRAZEE called out sick and informed the scheduling department and his Base Coordinator, Maryanne Christine, that his leave was FMLA related, that he was on his way to see his doctor, and reminded the company that he was still covered under the FMLA for intermittent until at least March 19, 2009, the date when his FMLA leave allegedly expired.

19.    On March 17, 2009, FRAZEE received a phone message from Ms. Christine that she, as well as the Director of Inflight Marielle Landry, Supervisor of Inflight Jesse Sexton, and Base Coordinator Jeanne Cepeda-Stiles, wanted to have a conference call with him on March 18, 2009. Ms. Christine also informed FRAZEE that his FMLA leave had terminated on March 4, 2009, as erroneously reflected in the Return to Duty form ALLEGIANT had received from FRAZEE's doctor's office. (This form mistakenly noted that FRAZEE was being released to full duty on March 4, 2009. However, FRAZEE had on numerous occasions discussed with ALLEGIANT that he was returning to work on an intermittent basis.)

20.    Not until the call from Ms. Christine on March 17, 2009, was FRAZEE aware that there was any confusion about his FMLA leave or that ALLEGIANT had terminated his FMLA leave effective March 4, 2009.

21.    FRAZEE immediately made an urgent call to his doctor's office, Dr. Brooks, and then to Human Resources personnel at ALLEGIANT, Robin Clark, informing her that there had been a mistake by his doctor's office in completing the Return to Duty form. FRAZEE's doctor's office immediately sent a revised Return to Duty form via facsimile on March 17, 2009, to ALLEGIANT clarifying that Mr. Frazee was to return to work on March 4, 2009, on an intermittent basis, and that he was not being released to full-duty.

22.     When FRAZEE spoke to Ms. Clark on March 18, 2009, about the revised form, she remarkably told FRAZEE that she could not accept the facsimile from the doctor's office. Ms. Clark implied that FRAZEE was being deceitful because the form merely reflected that the doctor's office crossed-out the error and that they had not initialed the change, even though the form had been faxed directly from the doctor's office. Ms. Clark further told FRAZEE that his FMLA leave had expired when the doctor's office had erroneously completed the form releasing him to full duty on March 4, 2009, despite the fact that FRAZEE had numerous conversations and e-mails with ALLEGIANT regarding his intermittent return to duty. Lastly, Ms. Clark admonished FRAZEE that his "case was closed."

23.     Ms. Clark next called Benefit Coordinator, Pat Stockfish, who likewise admonished FRAZEE that if he wanted his FMLA leave to extend past March 4, 2009, he would have to reapply for it and that his current FMLA leave "was closed."

24.     Because Ms. Clark implied that FRAZEE was being deceitful with respect to the revised form from the doctor's office and because she admonished him that he would have to reapply for FMLA leave, FRAZEE immediately tried to contact his doctor's office to clarify the situation and to obtain a corrected Return to Duty form without any information "crossed-out."

25.     Unable to reach his doctor or his doctor's assistant by phone, FRAZEE drove to the doctor's office where he was informed that his doctor was out of the office until Monday, March 23, 2009.

26.     While at Dr. Brook's office, FRAZEE called Ms. Clark and explained that the new form could not be completed until Monday, March 23, 2009. The doctor's assistant, however, was able to confirm the original error in paperwork and promised to send FRAZEE a revised form on Monday, March 23, 2009. While on the phone with FRAZEE, Ms. Clark asked

for Dr. Brook's phone number and office fax number and the doctor's assistant provided the information for FRAZEE to give to Ms. Clark over the phone.

27.     Although he was off on Thursday, March 19, 2009, FRAZEE emailed Ms. Clark to ensure that his FMLA leave authorization from ALLEGIANT was on hold pending receipt of the forms from his doctor's office on Monday, March 23, 2009.

28.     Ms. Clark responded via email that she would look over the documentation from Dr. Brook's office when it arrived on March 23, 2009.

29.     Despite ALLEGIANT having already received a corrected Return to Duty form on March 17, 2009, and anticipating receipt of yet another "perfected" Return to Duty form by Monday, March 23, 2009, FRAZEE was nevertheless terminated on Friday, March 20, 2009, for excessive absences, which allegedly resulted in him accumulating eighteen disciplinary points.

30.     Up until that time, FRAZEE had no idea where he stood on the point scale and had never been informed, counseled or disciplined as were other employees and in accordance with company policy that he was getting close to the requisite eighteen points that would justify termination.  During his termination meeting, FRAZEE inquired at least twice why he was not informed, counseled or disciplined regarding his absences prior to being terminated.

31.     ALLEGIANT violated FRAZEE's rights under the FMLA by penalizing him for absences that were clearly covered by FMLA leave and retaliated against FRAZEE by terminating his employment.

## COUNT I: FMLA
### (Interference With Rights)

32.     FRAZEE hereby readopts, realleges and incorporates the allegations set forth in paragraphs 1 through 31 by reference.

33.     During his employment, FRAZEE met all of the eligibility requirements to qualify for up to twelve (12) weeks of unpaid, job-protected, leave per year for qualifying reasons including a serious health condition as defined by the FMLA.

34.     FRAZEE exercised his rights under FMLA by requesting leave and, rather than being allowed to use FMLA leave, he was verbally admonished, treated differently than others similarly situated, and was ultimately terminated.

35.     ALLEGIANT, by verbally admonishing him, treating him differently and terminating FRAZEE's employment when he attempted to use FMLA leave, interfered with his exercising his rights as provided and protected by the FMLA.  Moreover, ALLEGIANT's proffered reason for FRAZEE's termination was a mere pretext to interfere with FRAZEE's attempt to use the rights afforded to him under the FMLA.

36.     ALLEGIANT did not act in good faith, nor did they have any reasonable grounds for believing that their actions were in compliance with the FMLA.

37.     As a result of ALLEGIANT's interference with FRAZEE's rights, FRAZEE has suffered lost compensation, including the loss of wages and benefits.

38.     FRAZEE has incurred, and will continue to incur, attorneys' fees and costs in this action, and is entitled to recovery of his fees and costs, pursuant to the FMLA.

39.     THEREFORE, FRAZEE respectfully requests that this Court award him damages for:

        (a) lost compensation and benefits;

        (b) front pay;

        (c) an amount equal to his economic damages as liquidated damages; and

        (d) reasonable attorney's fees and costs.

## COUNT II: FMLA
### (Retaliation)

40.     FRAZEE hereby readopts, realleges and incorporates the allegations set forth in paragraphs 1 through 39 by reference.

41.     FRAZEE engaged in statutorily protected activity by seeking a leave of absence covered by the FMLA.

42.     FRAZEE thereafter suffered adverse employment decisions when ALLEGIANT admonished him, treated him differently and terminated his employment.

43.     The decisions to admonish FRAZEE and terminate his employment were made as a direct result of, and in retaliation for, FRAZEE exercising his rights under the FMLA.

44.     ALLEGIANT did not act in good faith, nor did it have any reasonable grounds for believing that its actions were in compliance with the FMLA.   Moreover, ALLEGIANT's proffered reason for admonishing FRAZEE, treating him differently and terminating him were a mere pretext to retaliate against FRAZEE for attempting to exercise his rights afforded under the FMLA.

45.     As a result of ALLEGIANT's retaliatory conduct, FRAZEE has suffered lost compensation, including the loss of wages and benefits.

46.     FRAZEE has and will continue to incur attorneys' fees and costs in this action, and is entitled to recovery of these fees and costs pursuant to the FMLA.

47.     THEREFORE, FRAZEE respectfully requests that this Court award him damages for:

        (a) lost compensation and benefits;

        (b) front pay;

(c) an amount equal to his economic damages as liquidated damages; and

(d) reasonable attorney's fees and costs.

## DEMAND FOR TRIAL BY JURY

FRAZEE hereby respectfully demand trial by jury on all issues and counts triable of right

before a jury.

Date:   January 11th, 2010

Respectfully submitted,

Teresa A. Herrmann, Esq.
Florida Bar No.: 0882046
Jill S. Schwartz, Esq.
Florida Bar No. 523021
JILL S. SCHWARTZ & ASSOCIATES, P.A.
180 North Park Avenue, Suite 200
Winter Park, Florida 32789
Telephone:  (407) 647-8911
Facsimile:  (407) 628-4994
Attorneys for Plaintiff

## VERIFICATION

Personally appeared before the undersigned, DEREK E. FRAZEE, who being first duly

sworn, deposes and says that the allegations of this Verified Complaint and Demand for Jury

Trial, consisting of paragraphs 1 through 47 inclusive, are true and correct to the best of his

knowledge, information and belief.

_____
DEREK E. FRAZEE

STATE OF FLORIDA        )

COUNTY OF ORANGE      )

The foregoing instrument was acknowledged before me this _6th_ day of January, 2010,

by DEREK E. FRAZEE, who is personally known to me or who has produced

_____ as identification, and who did take an oath.

_____
Notary Public – State of Florida at Large
My Commission Expires:_____

CARMEN I. GUERRERO
MY COMMISSION # DD682383
EXPIRES June 05, 2011
(407) 398-01    FloridaNotaryService.com

10